IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:92-CR-0376-JOF |
| SAEED SIRANG, | : | |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

This matter is before the court on Petitioner's motion for a writ of error coram nobis [90-1].

**I.   Background**

Petitioner, Saeed Sirang, a native and citizen of Iran, was admitted to the United States as a foreign student on September 13, 1970. He subsequently became a legal permanent resident on March 25, 1974. On October 14, 1992, Petitioner was indicted on ten counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of wire fraud in violation of 18 U.S.C. § 1343. On December 12, 1993, the jury found Petitioner guilty of one count of wire fraud and six counts of bank fraud. Petitioner was sentenced to one year imprisonment on each count of bank fraud to run concurrently. The court sentenced Petitioner to five years' imprisonment on one count of wire fraud, however, it suspended the sentence and placed him on probation for five years. The court imposed $1,400,000 restitution and 120 hours of

community service. The United States Court of Appeals for the Eleventh Circuit affirmed his convictions. *See United States v. Sirang*, 70 F.3d 588, 591 (11th Cir. 1995). Petitioner filed a motion to vacate his convictions pursuant to 28 U.S.C. § 2255, which the court denied in 1999. Petitioner was released from prison on March 25, 1997.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), legal permanent residents who are convicted of an aggravated felony are subject to deportation. Under 8 U.S.C. § 1101(a)(43)(M)(i), an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000 is an "aggravated felony." The Immigration and Naturalization Service, as it was known at the time, placed Petitioner in removal proceedings on April 30, 1997. Petitioner's removal case was heard on February 18, 2005, and is set for a further hearing on March 15, 2007.

In the instant motion, Petitioner asks the court to vacate his bank and wire fraud convictions because his trial counsel failed to inform him of the immigration consequences if he was convicted. Petitioner avers that prior to his trial, he asked his counsel whether his immigration status would be affected in the event he was convicted. His counsel told Petitioner "there was nothing to worry about." His counsel also did not pursue any plea negotiations with the government. Petitioner contends that had he known he could be deported, he would have attempted to negotiate a plea to a lesser non-felony offense. Petitioner recognizes that he still would

> have been subject to removal under 8 U.S.C. § 1101(a)(43)(G), which provides that a theft offense for which the term of imprisonment is at least one year is an "aggravated felony." However, [Petitioner] could have asked the sentencing

> judge to reduce his one-year sentence by at least one day, had he been informed about the immigration consequences of his sentence and conviction. Thus, under this scenario, [Petitioner] would have been able to avoid removal from the United States pursuant to 8 U.S.C. § 1101(a)(43)(G).

*See* Motion, at 9-10.

## II.  Discussion

### A.  Availability of Writ of Error Coram Nobis

> Federal courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice. A court's jurisdiction over coram nobis petitions is limited to the review of errors "of the most fundamental character." . . . In addition, courts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier.

*United States v. Mills*, 221 F.3d 1201, 1203-04 (11th Cir. 2000) (citations omitted). *See also United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002).

The court will assume, without deciding, that Petitioner can bring a motion for a writ of error coram nobis. As the court discusses below, however, one aspect of Petitioner's motion does give the court pause as to the availability of such relief.

3

### B.     Ineffective Assistance of Counsel

"Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he 'must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial.'" *Paez-Ortiz v. United States*, 2006 WL 2970590 (11th Cir. Oct. 18, 2006) (unpublished decision) (citing *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)).

Although this case involves a not-guilty plea, the majority of precedent in the area of advice on the immigration consequences of a criminal conviction surrounds ineffective assistance of counsel claims relating to guilty pleas. The court finds the development of this area of the law relevant. In *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985), the Eleventh Circuit reiterated that failure to advise a client of the collateral consequences of a guilty plea did not constitute ineffective assistance of counsel. *Id*. at 768. The court also noted that "[c]ounsel's affirmative misrepresentation in response to a specific inquiry from the defendant may, however, under certain circumstances, constitute ineffective assistance of counsel." *Id.* at 768-69 (citing *Downs-Morgan v. United States*, 765 F.2d 1534, 1540 (11th Cir. 1985)). In *Downs-Morgan*, the Eleventh Circuit declined to adopt a per se rule that any affirmative misrepresentation about deportation consequences to a guilty plea would constitute ineffective assistance of counsel. Rather, the court held that under the circumstances there, where the petitioner contended that if he were deported to Nicaragua, he would be imprisoned for many years and possibly executed, combined with his "colorable"

4

argument of innocence, showed that the immigration consequences were "crucial to the informed nature of his plea." *Id*. at 1541.  The court cabined its ruling by noting, "[n]or do we suggest that an affirmative misrepresentation by counsel in response to a specific inquiry about the possibility of deportation or exclusion, without the additional factors of imprisonment and execution, is sufficient to warrant collateral relief." *Id.* at 1541 n.15.  *Cf. United States v. Couto*, 311 F.3d 179 (2d Cir. 2002) (establishing per se rule that affirmative misrepresentation concerning deportation consequences of guilty plea is deficient performance).

Here, to the extent Petitioner argues that his counsel was ineffective for failing to negotiate a plea to a lesser offense, the court finds this does not come within the scope of *Campbell* or *Downs-Morgan*.  There is no affirmative misrepresentation about the collateral consequences of a conviction under those circumstances.  Petitioner, however, also avers that prior to his trial, he asked his counsel whether his immigration status would be affected in the event he were convicted.  His counsel told Petitioner "there was nothing to worry about."  It is not completely clear to the court that this statement comes within the sphere constructed by *Downs-Morgan* or *Campbell*.  However, whether a statement of "nothing to worry about" is an affirmative misrepresentation is not a question the court need address because the court finds Petitioner's motion lacking for other reasons.

**C.     Change in Law**

5

One aspect of Petitioner's motion impacts the court's analysis of the availability of the writ of error coram nobis, as well as the performance and prejudice prongs of the *Strickland* analysis. To succeed in showing that the writ of error coram nobis is appropriate, Petitioner must show that valid reasons exist for not attacking the sentence earlier. To demonstrate that his trial counsel's performance was deficient, Petitioner must show that his counsel's advice was not sound based on the law that existed at the time. Finally, Petitioner must offer some form of prejudice he suffered from this performance at the time it was rendered. Although Petitioner's motion does not focus on it, immigration law has undergone substantial and several changes from 1992 to the present.

Prior to 1990, a trial judge had the authority to issue a judicial recommendation against deportation under then 8 U.S.C. § 1251(b). As part of the Immigration Act of 1990, Congress amended 8 U.S.C. § 1251(b) to remove this authority. An alien convicted of an aggravated felony, however, could still apply for a waiver of deportation under the Immigration and Nationality Act, Section 212(c). The alien applied to the Immigration Judge who could consider the application based on such factors as time spent and family ties in the United States and restitution for criminal activity.

However, through the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, the Immigration and Nationality Act was amended to eventually eliminate the Attorney General's authority to grant a waiver to deportation. AEDPA, enacted on April 24, 1996,

expanded the category of criminal convictions that would render an alien ineligible to apply for relief under section 212(c).  IIRIRA, enacted on September 30, 1996, and effective transitionally from October 30, 1996 through April 1, 1997, and permanently thereafter, eliminated section 212(c) altogether and replaced it with a new section that combined "suspension of deportation" relief with the old provisions of section 212(c), for a new relief entitled "cancellation of removal."  Cancellation of removal, however, was not available for aliens who had been convicted of an "aggravated felony."

Petitioner was convicted by the jury in December 1993 and his conviction affirmed in 1995, prior to changes in immigration law brought about by AEDPA and IIRIRA.  Petitioner seems to recognize this.  He testifies in his affidavit:

> After the jury verdict and prior to sentencing, my attorney suggested that I consult an immigration attorney.  I did so, and was advised that I would be eligible for relief from deportation pursuant to section 212(c) of the Immigration & Nationality Act.  The immigration attorney further advised that I could not apply for 212(c) relief at that time since my conviction was on direct appeal to the Court of Appeals, but that we could do so later, in the event that the Court affirmed my conviction.  While my case was pending before the Court of Appeals, section 212(c) was repealed by Congress.

*See* Sirang Aff., at 3.  The court notes that as a matter of law, Petitioner is not correct about the time in which section 212(c) was repealed.  At the earliest, that happened on October 30, 1996. Petitioner's conviction was affirmed almost a year prior on December 12, 1995.

Thus, Petitioner's own testimony shows that at the time he went to trial, the statement made by his attorney was not an affirmative misrepresentation.  Petitioner would have been

7

eligible to apply for relief from deportation under section 212(c), and thus, the fact of the conviction, itself, would not have posed an inescapable problem for Petitioner. Therefore, Petitioner did not suffer any prejudice as a result of his attorney's statement. Additionally, the performance prong of *Strickland* does not require counsel to anticipate future Congressional enactments of law. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (collecting extensive Eleventh Circuit case law and holding "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a chance in the law constitutes ineffective assistance of counsel"). Thus, the fact that after Petitioner was convicted, Congress altered the law surrounding Petitioner's immigration status is not a basis upon which an ineffective assistance of counsel claim can lie.

Furthermore, Petitioner apparently came to understand at some point after his conviction that he would not be able to use section 212(c), but he did not challenge the effectiveness of his trial counsel then. Petitioner avers that although the INS initiated removal proceedings on April 30, 1997, he did not really believe that the INS would attempt to deport him. He also contends that the removal proceedings were not even "calendared" until 2004. The court is not convinced that such a scenario satisfies the element of coram nobis that he could not have attacked his sentence previously. Petitioner, himself, admits that he secured immigration counsel to address the collateral consequences of his conviction once removal proceedings were initiated in 1997, ten years before this petition was filed. However, because

the court found above that Petitioner could not satisfy the *Strickland* standard, the court need not resolve whether Petitioner could have attacked his sentence prior to 2007.

Finally, even if the court does not consider the evolving nature of immigration law, Petitioner's assertion of prejudice is highly speculative. Petitioner contends that had he known he could be deported, he would have attempted to negotiate a plea to a lesser, non-felony offense. There is, of course, no way of knowing whether the Government would have been amenable to such a plea. Furthermore, Petitioner still would have been subject to removal in such a scenario. To avoid removal, not only would the Government have had to agree to a non-felony offense, the sentencing judge would also have had to agree to reduce his one-year sentence by at least one day. It is not clear whether such speculative assertions are sufficient to show prejudice. *Compare United States v. Castro*, 26 F.3d 557, 560 (5th Cir. 1994) ("deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel"), *with United States v. Flores-Ochoa*, 139 F.3d 1022 (5th Cir. 1998) (petitioner could not establish prejudice prong of *Strickland* due to attorney's failure to move for continuance because no evidence in record showed judge would have granted it). *See also United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005) (allowing ineffective assistance of counsel claim to proceed because petitioner could have gone to trial or renegotiated plea agreement to avoid deportation, could have pled guilty to a lesser charge, or the parties could have stipulated to a sentence of less than one year). Again, the court need not resolve this issue because Petitioner cannot

demonstrate that his counsel's performance was deficient or that he suffered prejudice as a result of it.

### III. Conclusion

For the foregoing reasons, the court DENIES Petitioner's motion for a writ of error coram nobis [90-1].

SO ORDERED, this 2nd day of February 2007.

                                           s/ J. Owen Forrester
                                             J. OWEN FORRESTER
                         SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)